IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIRZA GEHMAN,

        Plaintiff,

  v.

UNUM LIFE INSURANCE CO. of AMERICA;
PHOTON DYNAMICS, INC.

        Defendants.
                                 /

No. C 07-2381 SI

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On February 29, 2008, the Court heard argument on the parties' cross-motions for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendants' motion and DENIES plaintiff's motion.

**BACKGROUND**

This is an action seeking recovery of Accidental Death and Dismemberment ("AD&D") insurance benefits brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The facts are undisputed. Plaintiff's husband, John Gehman, was employed by defendant Photon Dynamics, Inc. as a Systems Engineer from September 5, 1995 until August 12, 2005. Photon Dynamics provides its employees with a group benefits plan ("the Plan"), which offers both Life Insurance and AD&D Insurance. Defendant Unum Life Insurance Company of America ("Unum") issues the Plan. On August 12, 2005, Mr. Gehman terminated his employment with Photon Dynamics.

The following day, Mr. Gehman fell from his bicycle while on a bike ride with his daughter and sustained a serious head injury. After unsuccessful medical treatment, he died two days later on August 15, 2005.

Mr. Gehman's widow, plaintiff Mizra Gehman, filed a claim for basic life insurance benefits, which Unum paid on September 12, 2005 in the amount of $263,180.14. Plaintiff subsequently filed a claim for AD&D benefits which Unum denied on the basis that, unlike the Life Insurance policy, coverage under the AD&D policy expired the day Mr. Gehman terminated his employment. On November 18, 2006 plaintiff appealed the denial of AD&D benefits. On February 7, 2007, after appellate review, Unum affirmed the original decision to deny AD&D benefits. On May 2, 2007, plaintiff filed the instant action, contending that Unum abused its discretion when it denied plaintiff AD&D benefits.

The Summary of Benefits ("Summary") describes the Plan's Life Insurance and AD&D benefits. The Summary describes the Life Insurance benefits as follows:

**BENEFITS AT A GLANCE**
**LIFE INSURANCE PLAN**

This life insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death. The amount your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death according to the terms and provisions of the plan.
. . .

**ELIGIBLE GROUP(s):**
All Employees in active employment in the United States with the Employer

. . .

**OTHER FEATURES:**
Accelerated Benefit
Conversion
Portability

Tetreault Decl., Ex. A, at UASP00004-05.

2

In contrast to the Life Insurance plan which has three additional "features" – conversion, portability, and accelerated benefit – the AD&D insurance plan has only one additional "feature" which is portability:

**BENEFITS AT A GLANCE**
**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN**

This accidental death and dismemberment insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death or for you in the event of any other covered loss. The amount you or your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death or any other covered loss according to the terms and provisions of the plan.

. . .

**ELIGIBLE GROUP(s):**
All Employees in active employment in the United States with the Employer

. . .

**OTHER FEATURES**
Portability

*Id*. at UASP00006-07.

The Summary includes General Provisions that apply to both policies. These provisions specify when coverage ends:

**GENERAL PROVISIONS**

. . .

**WHEN DOES YOUR COVERAGE END?**
Your coverage under the Summary of Benefits or a plan ends **on the earliest of**:
– the date the Summary of Benefits or a plan is cancelled;
– **the date you are no longer in an eligible group**;
– the date your eligible group is no longer covered;
– the last day of the period for which you made any required contributions; or
– **the last day you are in active employment** unless continued due to a labor dispute or due to a covered layoff or leave of absence or due to injury or sickness, as described in this certificate of coverage.

*Id*. at UASP00021-22 (emphasis added).

Only the Life Insurance plan has a conversion feature. The conversion privilege allows the

3

insured to convert coverage to an individual life policy within thirty-one days of termination of employment, without evidence of insurability. The Summary explains how the conversion privilege affects Life Insurance coverage if the formerly eligible participant should die within thirty-one days of the end of coverage:

**LIFE INSURANCE
BENEFIT INFORMATION**

. . .

**WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (Conversion Privilege)**
When coverage ends under the plan, you can convert your coverage to an individual life policy, without evidence of insurability. The maximum amount that you can convert is the amount you are insured for under the plan. You may convert a lower amount of life insurance.

You must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:
– your employment terminates; or
– you no longer are eligible to participate in the coverage of the plan.

. . .

**DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD:**
If you die within the 31 day conversion application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

*Id*. at UASP00026-27.

Both the Life Insurance Plan and the AD&D plan have a portability feature. Under that feature, if an insured's employment ends, the insured retires, or the insured works less than the minimum required hours to qualify for group coverage, the portability privilege allows the insured to maintain coverage under the group policy by making the premium payments. However, the applicant must be found eligible to apply for portable coverage, and the coverage ends if the insured fails to make a premium payment or if the group policy is cancelled. The Summary describes the AD&D portability

4

feature as follows:

**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**
**OTHER BENEFIT FEATURES**

**WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)**
If your employment ends with or your retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself.

. . .

**APPLYING FOR PORTABLE COVERAGE**
You must apply for portable coverage for yourself and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

You are not eligible for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;[1]
- the policy is cancelled . . .
- you failed to pay the required premium under the terms of this plan.
. . .

*Id.* at UASP00036 (emphasis in original). The Summary's explanation of portability coverage, in both the Life Insurance and AD&D plans, is silent regarding death during the thirty-one day portability application period. Mr. Gehman died before filing either a portability or conversion application.

---

[1] The Plan defines injury as "for purposes of Portability, a bodily injury that is the direct result of an accident and not related to any other cause." *Id.* at UASP00041.

5

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

# DISCUSSION

## I. Standard of review

The threshold issue is whether this Court reviews the benefit denial for traditional abuse of discretion or under a heightened abuse of discretion standard. The Supreme Court has held that denials of benefits under ERISA are reviewed *de novo* by the district court "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[F]or a plan to alter the standard of review from the default of *de novo* to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (*citing Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1998)). The parties agree that defendant has discretionary power, and therefore that an abuse of discretion standard applies here.

The abuse of discretion standard can be heightened, however, by the presence of a conflict of interest. *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322 (9th Cir.1995). "A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Abatie*, 458 F.3d at 968. Factors that could show an administrator's self-interest include:

> evidence of malice, of self-dealing, or of a parsimonious claims-granting history, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id*. at 968-69.

Plaintiff argues that heightened review is warranted because Unum has a conflict of interest. Plaintiff asserts that this conflict stems from Unum's dual role of interpreting the policy and paying the benefits and from Unum's documented parsimonious claims history. Defendant argues that a

7

heightened level of review is not required because the dispute is strictly one of contract interpretation and there are no evidentiary issues or alleged or actual procedural irregularities in contention.

The Court finds that Unum does have a structural conflict of interest because it interprets the policy and pays the benefits. Although this structural conflict exists, plaintiff has not alleged any additional factors tending to show an actual breach of fiduciary duty, other than her unsupported statement that Unum has a documented parsimonious claims-granting history.[2] There are no factual disputes between the parties, no evidence or allegations of malice, self-dealing, or procedural errors committed by the defendants. Thus, the Court will review Unum's decision under a slightly heightened abuse of discretion standard.[3]

## II. Ambiguity of the AD&D policy

Plaintiff contends that the policy language is ambiguous and should therefore be construed against the drafter pursuant to common law contract principles. Defendant argues that the policy is not ambiguous, and even if it were, the common law rule should not be applied because the policy grants defendant discretionary authority to interpret the policy provisions.

A plan provision is ambiguous if, after applying the normal principles of contractual

---

[2] Plaintiff cites John H. Langbein, *Trust Law As Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials Under Erisa*, 101 Nw. U. L. Rev. 1315, 1317-21 (2007), for support. However that article discusses UNUM/Provident's alleged abuse of *disability* claims processing where "[t]he recurrent question is whether, on the facts regarding this worker's physical and occupational circumstances, he or she is unable to resume employment as defined in the policy." *Id.* at 1318. Plaintiff fails to make any connection to Unum's history with regard to life insurance or AD&D policies, or any connection to claims, such as the instant one, that do not involve any factual disputes. Although the Court notes UNUM/Provident's questionable history with regard to disability claims, it cannot categorically apply that history to all divisions of the company without some evidence in support.

[3] The Court's decision would be the same under a traditional abuse of discretion standard or a *de novo* standard.

8

construction, the plan "is fairly susceptible of two different interpretations." *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990). Plaintiff argues that the AD&D policy is ambiguous because it is silent on whether coverage exists during the thirty-one day period. Plaintiff contends that because the Life Insurance policy provides coverage during the thirty-one day application period for its conversion feature, and because the Life and Insurance and AD&D plans are part of a unified policy, an unwary reader of the policy would reasonably assume that the same coverage would be provided under the AD&D portability feature. Defendant asserts that the policy clearly states when basic AD&D coverage ends, and contains no language to suggest that AD&D coverage continues automatically after termination during the portability application period.

The Court finds that although it leaves an unfortunate hole in coverage, the Plan is unambiguous.[4] The Summary clearly limits automatic coverage during the thirty-one day application period to the Life Insurance conversion feature. The language in question is located in a section under the headings labeled "(Conversion Privilege)" and "DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD"; and it repeatedly refers only to conversion.[5] Notably, the

---

[4] Plaintiff asked the Court to examine footnote six of *Henkin v. Northrop Corp.*, 921 F.2d 864, 869 (9th Cir. 1990), which states "We are also not faced with a situation where an employer's retroactive firing of an employee, while not stripping the employee of his conversion rights, gives the employee such a limited time to exercise those rights as to deprive the employee of the benefit of his bargain. We leave that situation to be resolved by future decisions." Plaintiff asserts that because her husband received his mortal injury one day after he terminated his employment, he did not have adequate time to apply for the AD&D portability coverage, and should therefore be covered as a matter of equity. However this is not a case where an employer has retroactively terminated an employee, thereby depriving the employee of the opportunity to obtain his conversion (or in this case portability) rights. Here, plaintiff's husband terminated his own employment. That he did not have time to apply for AD&D portability benefits was certainly the worst kind of luck, but was not the fault of his employer or Unum. Accordingly, the Court finds *Henkin* inapposite.

[5] The Life Insurance policy conversion feature contains the following express language: "If you die within the 31 day *conversion* application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been *converted*. This coverage is available whether or not you have applied for an individual life policy under the *conversion* privilege." Tetreault Decl., Ex. A at UASP00027 (emphasis added).

9

Life Insurance portability feature does not contain the same or similar language. Tetreault Decl., Ex. A at UASP00030. The Plan clearly distinguishes between conversion coverage and portability coverage. Furthermore, the Summary states that if Life Insurance portability coverage is not available or has ended, the insured "may qualify for conversion coverage." *Id*. at UASP00032. This language suggests that the conversion feature, not automatic coverage during the thirty-one day period, serves as fallback protection when portability is not available. The AD&D Plan does not contain the protective conversion feature. Accordingly, the Court finds the plan unambiguous and need not reach the issue of whether the common law rule of construing ambiguous terms against the drafter should be applied when the policy grants defendant discretionary authority to interpret the policy provisions.[6]

### III. Unum's interpretation of the policy

Under the abuse of discretion standard, the Court will reverse Unum's determinations if they are arbitrary and capricious. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001). "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000). The question is not "whose interpretation of the plan documents is most persuasive, but whether the . . . interpretation is unreasonable." *Canseco v. Constr. Laborers Pension Trust*, 93 F.3d 600, 606 (9th Cir. 1996) (citations and internal quotations omitted). The reviewing court must look to the plain language of the plan to determine whether the administrator's interpretation of that plan is "arbitrary and capricious." *Id*. The Ninth Circuit has consistently explained that administrators "abuse their discretion if they construe

---

[6] There is some question whether this common law rule applies when the plan administrator has express discretionary authority to interpret plan provisions and exercises that authority. *See Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1196 (9th Cir. 1996).

10

1 provisions of a plan in a way that clearly conflicts with the plain language of the plan." *Id.* (internal
2 quotation marks and citations omitted).

3     The question before the Court is whether Unum abused its discretion in construing the AD&D
4 plan provisions in a way that conflicts with the plain language of the plan. The parties agree that basic
5 coverage under AD&D policy ended at the time Mr. Gehman terminated his employment. The parties
6 dispute whether the portability feature of the AD&D policy automatically extended coverage during the
7 thirty-one day application window after the basic AD&D coverage terminated. Plaintiff asserts that the
8 AD&D policy is ambiguous, and thus Unum abused its discretion by not construing the policy against
9 itself. Defendant contends that Unum's interpretation of the policy was reasonable because the policy
10 clearly states that AD&D coverage ends at the last day an employee is in active employment, and
11 contains no language to suggest that AD&D coverage continues automatically after termination.

12     The Court finds that Unum's interpretation does not conflict with the plain language of the Plan.
13 The Summary plainly states that the only additional feature of the AD&D plan is portability, and it
14 contains no language to suggest that portability coverage is automatic during the thirty-one day period.
15 Furthermore, as stated above, the Court has found the plan to be unambiguous. Accordingly, the Court
16 finds that Unum's interpretation of the policy was reasonable, and hereby GRANTS defendants' motion
17 and DENIES plaintiff's motion.

18
19
20
21
22
23
24

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES plaintiff's motion [Docket No. 29] and GRANTS defendants' cross motion [Docket No. 34].

**IT IS SO ORDERED.**

Dated: March 6, 2008

SUSAN ILLSTON
United States District Judge